IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NIGEL DEDIEECE CARTER,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-3099 |
| | : | |
| **CHESTER COUNTY PRISON,** *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

**PEREZ, J.**                                                                                                          **NOVEMBER 9, 2023**

*Pro se* Plaintiff Nigel Dedieece Carter ("Carter") brings this Complaint pursuant to 42 U.S.C. § 1983 against Chester County Prison ("CCP") and Chester County, Pennsylvania based on allegations that CCP interfered with his legal mail and denied him access to the courts. Carter seeks leave to proceed *in forma pauperis*.[1] For the following reasons, the Court will grant Carter leave to proceed *in forma pauperis* and dismiss his Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Carter will be given an opportunity to file an amended complaint with respect to his claims against Chester County.

---

[1] Because Carter was incarcerated at the time he filed the Complaint in this matter, the Prison Litigation Reform Act ("PLRA") applies, even though Carter has since been released from imprisonment. *See, e.g., In re Smith*, 114 F.3d 1247, 1251 (D.C. Cir. 1997) ("If a litigant is a prisoner on the day he files a civil action, the PLRA applies."). Thus, Carter was required to pay an initial partial filing fee, which was calculated based upon the financial information in the six-month account statement that he provided to the Court. *See Drayer v. Att'y Gen. of Del.*, 81 F. App'x 429, 431 (3d Cir. 2003) (*per curiam*). To avoid paying the remainder of the filing fee, Carter was advised that he could file a new motion to proceed *in forma pauperis* that informs the Court how he supports himself after his release from incarceration. (*See* ECF No. 5.) Carter paid the partial filing fee (*see* ECF No. 6) and submitted a new motion to proceed *in forma pauperis* (*see* ECF No. 7).

I.     **FACTUAL ALLEGATIONS**

Carter avers that on July 22, 2021, his sister, Yesene Pitts, sent "'legal mail' via 'priority mail'" to him at CCP and was informed by the post office that the mail would be delivered on July 23, 2021. (Compl. at 7.) Carter asserts that the mail[2] was sent in order to "support [him] filing a second PCRA Pro Se for case no. CP-15-CR-411-2011" and for use at a "'Criminal Trial Hearing' scheduled on 'July 27, 2021' . . . for case no. CP-15-CR-1929-2021." (*Id.*)

On July 28, 2021, CCP allegedly received Carter's "'legal mail' . . . and deemed it 'unacceptable correspondence'" but "failed to issue a copy of this notice" to Carter. (*Id.* at 6-7.) On August 9, 2021, Carter sent an inmate request to the CCP mailroom seeking "an update on the status of this 'legal mail'" and CCP responded to his inmate request on August 10, 2021, advising Carter that "'nothing ha[d] come for [him].'" (*Id.* at 6.) Carter asserts that CCP transferred him to another prison on January 6, 2022 "without issuing a copy of [the] 'unacceptable correspondence' notice to [him] or the sender until after 01/25/22." (*Id.* at 6-7) Carter avers that once the "the legal mail" envelope "was finally returned" to Pitts, she remailed it to him "at an SCI facility via 'Smart Communications/PADOC.'" (*Id.* at 7-8.)

Carter also asserts that CCP deducted money from his prison account on August 13, 2021 for a check "written out to the District Justice Administration" ("DJA") for the purchase of audio transcripts. (*Id.* at 8-9.) Carter allegedly wanted to obtain audio transcripts so that he could amend written transcripts in his pending criminal case. (*Id.* at 9.) On August 23, 2021, DJA returned Carter's check with a letter advising Carter that he needed a "permission letter" from

---

[2] Carter alleges that the mail consisted of the following items: a first PCRA amended copy, sentencing hearing transcripts, a July 25, 2021 response to Chester County Court's Rule 907 notice, copies of a driver's license and an Uber driver account with trip details and a receipt. (Compl. at 7.)

2

CCP in order to receive the audio transcripts. (*Id.* at 8-9.) Carter asserts that on August 24, 2021, he sent an inmate request to Director Tim Mulrooney requesting a permission letter, but he allegedly did not receive a response. (*Id.*) Carter avers that CCP did not offer him an opportunity to listen to the audio tapes until he raised the issue in his § 2241 habeas petition filed on March 3, 2022. (*Id.*) Carter avers that he declined an offer from CCP to listen to the audio tapes in May 2022 because it had been nine months "of seeking relief for Brady v. Maryland and the damage [was] done already." (*Id.*)

Carter's Complaint asserts violations of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. (*Id.* at 4-5.) More specifically, Carter alleges that Defendants violated the First Amendment by "interfering with the free flow of incoming and outgoing mail" and by "unjustifiably chill[ing]" his "right of access to the courts." (*Id.* at 5.) He further asserts that Defendants violated his Fourth Amendment right to "be secure in [his] papers against unreasonable seizures" because they confiscated his mail without providing him notice. (*Id.*) Carter also avers that the confiscation of his "legal mail" "chilled" him "as a Pro Se prisoner," and violated his rights to due process, a speedy trial, and the effective assistance of counsel. (*Id.*) Finally, Carter alleges that the confiscation of his "'legal mail' . . . violated the prohibition of cruel and unusual punishment" guaranteed by the Eighth Amendment. (*Id.*)

Carter seeks an unspecified amount of monetary relief "for the punitive damage inflicted by the defendant(s)" in connection with their "reckless disregard for the truth" in responding to his August 9, 2021 inmate request and for their "unjustified censorship" in relation to his August 24, 2021 inmate request for a permission letter. (*Id.* at 7.) Carter contends that the actions of the Defendants "unjustifiably chilled [his] right of access to the courts and impaired the self-

3

representation of seeking relief" in his criminal cases by "causing a delay in [his] right to speedy trial" and by violating his "right to due process and redress." (*Id.* at 7, 9.)

## II.   STANDARD OF REVIEW

The Court grants Carter leave to proceed *in forma pauperis* because it appears that he is incapable of paying the remaining fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, the Complaint fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Carter is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

The Court understands Carter to assert constitutional claims based on his allegations that CCP interfered with his legal mail and denied him access to the courts. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a

claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Claims Against Chester County Prison

Carter names CCP as a Defendant; however, a prison or correctional facility is not a "person" under § 1983. *Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cty. Farms Prison*, 426 F. Supp. 271 (E.D. Pa. 1976)); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009). Accordingly, Carter's claims against CCP must be dismissed with prejudice because CCP "is not a legal entity susceptible to suit." *See Cephas*, 2010 WL 2854149, at *1; *see also Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) (*per curiam*) (affirming dismissal of claims against county prison because even though "[a] local governmental agency may be a 'person' for purposes of § 1983 liability, [the county prison] is not a person capable of being sued within the meaning of § 1983" (internal citations omitted)); *Mincy v. Deparlos*, 497 F. App'x 234, 239 (3d Cir. 2012) (*per curiam*) (district court properly concluded that a county prison is not "person" within meaning of section 1983).

### B. Claims Against Chester County, Pennsylvania

To plead a § 1983 claim against a municipality, such as Chester County, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying *Monell* to claims against medical contractor). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d

Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* (quoting *Bielevicz*, 915 F.2d at 850). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiffs'] injury." *Id.* (internal quotations and alterations omitted). In other words, "[c]ustom requires proof of knowledge and acquiescence by [a municipal] decisionmaker." *McTernan*, 564 F.3d at 658; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995) (to establish municipal liability, the plaintiffs "must show that a policymaker for the Township authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence").

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d

93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* "Ordinarily, this requires a plaintiff to identify a pattern of similar constitutional violations by untrained employees that puts municipal decisionmakers on notice that a new program is necessary." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (internal quotations omitted). "Otherwise, the plaintiff needs to show that failure to provide the identified training would likely result in the violation of constitutional rights — *i.e.*, to show that the need for more or different training was so obvious." *Id.* (internal quotations and alterations omitted). "Additionally, the identified deficiency in a [municipality's] training program must be closely related to the ultimate injury; or in other words, the deficiency in training must have actually caused the constitutional violation." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (internal quotations and alterations omitted). "[T]he causation inquiry focuses on whether the injury could have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Id.* at 226.

    Carter has not alleged a plausible basis for municipal liability against Chester County because nothing in the Complaint suggests that any policy or custom of the county caused the constitutional violations he describes in his Complaint. In fact, Carter alleges no factual allegations against Chester County itself. Accordingly, Carter has failed to articulate a plausible municipal liability claim, and the claims against Chester County will be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Carter leave to proceed *in forma pauperis* and dismiss the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Carter's claims against CCP will be dismissed with prejudice and his claims against Chester County will be dismissed without prejudice. The Court will grant Carter leave to file an amended complaint in the event he can cure the defects the Court has identified in his claims against Chester County. An appropriate Order follows, which provides further instruction as to amendment.

BY THE COURT:

_____
**MIA R. PEREZ, J.**